UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

SARAH KAE MOWERS,

                    Plaintiff,

v.

UNION PACIFIC RAILROAD
COMPANY,

                    Defendant.

Case No. 4:16-cv-00177-CWD

**MEMORANDUM DECISION AND
ORDER**

## INTRODUCTION

Currently pending before the Court is Defendant Union Pacific Railroad Company's motion to dismiss for failure to state a claim. (Dkt. 5.) Defendant argues Plaintiff Sarah Mowers's complaint fails to state a claim because Union Pacific did not owe a duty to Mowers, which in turn negates her sole claim for negligence against Union Pacific.

All parties have consented to the jurisdiction of a United States Magistrate Judge to adjudicate this matter. 28 U.S.C. § 636(c). (Dkt. 10.) The motion has been fully briefed

**MEMORANDUM DECISION AND ORDER - 1**

and the Court heard oral argument on July 28, 2016.[1] After review of the record and

consideration of the parties' arguments and relevant legal authorities, and as more fully

explained below, the Court will grant the motion.

## BACKGROUND[2]

At approximately 10:30 p.m. on February 25, 2015, Mowers was traveling home

from work on her longboard. Mowers came to a railroad crossing where Union Pacific

railroad train #LCT47B-25 was at a standstill, blocking both the road and sidewalk.

Mowers had never encountered a train at this crossing before. Mowers waited for twenty

minutes or more, and cars on the road began to back up and turn around. Mowers walked

along the tracks two or three cars down from the crossing to find a place to cross the

tracks. She decided to duck underneath the coupling between two train cars. Although

she almost completed the maneuver, her right foot did not clear the track before the train

jolted forward without warning. The train rolled over the lateral aspect of Mowers's right

foot, severing it. The train's movement was not preceded by any warning whistle, bell, or

horn.

Mowers called 911 on her cellphone. Paramedics and police officers arrived at the

scene. Two police officers climbed over the coupling between the train cars to find

Mowers, and then waved down the engineer to stop the train. Paramedics also climbed

over the coupling to attend to Mowers. Mowers was then placed on a backboard, lifted

---

[1] The parties agreed to stay discovery while the Court considered the motion under advisement. (Dkt. 19.)

[2] For purposes of deciding the motion to dismiss, all facts alleged in the complaint are accepted as true.

**MEMORANDUM DECISION AND ORDER - 2**

over the train coupling, and loaded into the waiting ambulance. At the hospital, Mowers underwent surgery for lower leg amputation.

Prior to the accident, the train was at a total standstill. The train was in the process of switching cars in the rail yard, and both the Engineer and railroad staff were unaware of Mowers's presence until police officers waved and alerted them. At no time before, during, or after the accident did the train clear the intersection or the location where Mowers was found.

Mowers alleges she suffered serious and severe injuries, which included amputation of the lower part of her right leg, limiting her ability to ambulate. She claims damages for past and future medical expenses, lost wages, pain and suffering, loss of enjoyment of life, and permanent injury.

Mowers asserts Union Pacific was negligent. Although she concedes she was trespassing, Mowers claims Union Pacific had a duty to maintain the railroad crossing in a reasonable and safe manner, which included a duty under Idaho Code § 49-1425 not to block an intersection for more than fifteen minutes when vehicular traffic is waiting.[3] Mowers claims the violation of § 49-1425 constitutes intentional, reckless, or willful conduct, giving rise to a duty despite her status as a trespasser. Alternatively, Mowers argues Union Pacific had a duty to warn her of a dangerous condition, relying upon Section 335 of the Restatement (2nd) of Torts.

---

[3] Mowers asserts that a longboard, which is a type of skateboard, is a vehicle under Idaho Code § 49-123(2). The Court assumes, without deciding, that Mowers' longboard constitutes a vehicle under this statute for the purpose of this motion.

MEMORANDUM DECISION AND ORDER - 3

Union Pacific argues that, under Fed. R. Civ. P. 12(b)(6), Mowers's complaint is subject to dismissal because Mowers, an undiscovered trespasser, was not owed a duty by Union Pacific to prevent her from harm. Additionally, Union Pacific contends Mowers's reliance upon Idaho Code § 49-1425 to impose a duty is misplaced, because the statute is preempted by the Interstate Commerce Commission Termination Act. And finally, under the Restatement, Union Pacific argues no duty to warn arose because Mowers did not allege constant trespass, the danger was easily discoverable, and Union Pacific exercised reasonable care.

## DISCUSSION

### 1.    Motion to Dismiss Standards

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the claim for relief by addressing whether the complaint states a claim. When the court is testing the sufficiency of the claims for relief, the complaint must be construed in a light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes,* 416 U.S. 232 (1974). The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41 (1957). The issue is

not whether the plaintiff will ultimately prevail or is likely to prevail, but whether the plaintiff is entitled to offer evidence to support the claim. *Scheuer*, 416 U.S. at 240.[4]

## 2.      Idaho State Law Negligence Claim

The elements of a negligence action under Idaho law are: "(1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *McDevitt v. Sportsman's Warehouse, Inc.*, 255 P.3d 1166, 1169 (Idaho 2011).

The duty owed by a landowner to a person injured on his land depends upon the status of the injured person. *Peterson v. Romine*, 960 P.2d 1266, 1269 (Idaho 1998). An individual on another's land may fall into one of three categories: an invitee, a licensee, or a trespasser. Mowers admits she was a trespasser at the time of her injury, and therefore admits she entered upon Union Pacific's property without permission, invitation, or lawful authority. *Peterson*, 960 P.2d at 1269. Nonetheless, she argues Union Pacific had a duty not to intentionally or willfully injure her, based upon the standards enumerated under common law, upon the Restatement, or upon a negligence per se theory on the grounds Union Pacific violated Idaho Code § 49-1425. Each will be discussed in turn.

---

[4] The motion before the Court does not present an *Iqbal/Twombly* issue, which prohibits a complaint from simply setting forth a recitation of the elements of a cause of action without sufficient factual statements in support. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (a complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."); and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("[D]etermining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Rather, Union Pacific argues that, as a matter of law, Mowers's facts do not state a claim for relief.

**MEMORANDUM DECISION AND ORDER - 5**

A.     *General Duty Owed to Trespassers*

"Anyone who goes upon the private property of another without lawful authority or without permission or invitation, express or implied, is a trespasser to whom the landowner owes no legal duty until his presence is discovered. [The landowner] is only required to refrain from wanton or willful acts which occasion injury." *Lindquist v. Albertsons, Inc.*, 748 P.2d 414, 415 (Idaho Ct. App. 1987) (quoting *Bicandi v. Boise Payette Lumber Co.*, 44 P.2d 1103, 1112 (Idaho 1935)). The current Idaho Jury Instruction 3.19 similarly defines an owner or occupier's duty to a trespasser, providing that the owner owes no duty to a trespasser whose presence on the premises is unknown or could not reasonably have been anticipated. IDJI 2d 3.19.

But, once the presence of the trespasser becomes known or reasonably could have been anticipated, the land owner has a duty not to injure the trespasser by any intentional or reckless act. *Id. See DeGraff v. Wight*, 944 P.2d 712, 714 (Idaho 1996) (finding reversible error when the court failed to use the proper Idaho jury instruction applicable to trespassers). This standard of conduct prohibits the owner from engaging in "intentional or reckless actions, taken under circumstances where the actor knew or should have known that the actions not only created an unreasonable risk of harm to another, but involved a high degree of probability that such harm would actually result." IDJI 2d 2.5. *See DeGraff*, 944 P.2d at 714 (quoting Idaho Jury Instruction 225 (1985) as the correct standard of conduct); *see also Jacobsen v. City of Rathdrum*, 766 P.2d 736, 740 (Idaho 1988) (citing IDJI 225 (1985)).

**MEMORANDUM DECISION AND ORDER - 6**

Under general common law principles, there are no facts in the complaint suggesting Union Pacific either knew of, or should have anticipated, Mowers's presence. Mowers admits Union Pacific had no knowledge of her presence until after her injury had occurred.[5]  Accordingly, Union Pacific owed her no duty unless her presence could have reasonably been anticipated. But, Mowers admits she had "never encountered a train on these tracks at any time in the area, much less at night when she was coming home after work." Compl. ¶ 11. Mowers's admission suggests there had never been a train stopped in that location prior to that evening, giving rise to the inference that Union Pacific had no reason to anticipate frequent trespassers in the area. *See Lindquist*, 748 P.2d at 415 (explaining that frequent, general trespassing in the area would trigger a duty to protect future trespassers). Consequently, no duty arose.

In the abstract, even if the Court assumes railroad companies should expect people to crawl under or climb over the couplings of a stationary train, and thus anticipate trespassers, at least one court has rejected such a theory. For example, in *Anderson v. Green Bay & W. R.R.*, 299 N.W.2d 615, 616 (Wis. Ct. App. 1980), the court considered whether the railroad owed a duty to a woman who crawled under a stationary train's couplings to cross the tracks. The train was engaged in switching operations and moved while the plaintiff was attempting the maneuver. Both of the plaintiff's legs were severed. In that case, the court concluded "the railroad has no duty to continuously exercise a lookout for individuals between or along the cars when it is performing its switching

---

[5] Mowers verified the complaint. (Dkt. 1 at 6.) A verified complaint may be treated as an affidavit to the extent it is based upon personal knowledge and sets forth facts admissible in evidence. *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985).

**MEMORANDUM DECISION AND ORDER - 7**

operations." *Id.* at 617. "If the trespasser is discovered and in danger, the [landowner] has a duty to warn, but … no duty to maintain a lookout for passengers." *Id.* at 618. The court found the railroad not liable for Anderson's injuries under a negligence theory. *Id.*

Here, the train's presence was readily observable. The train's mere presence on the tracks, or its engagement in switching operations, does not constitute willful or intentional conduct. *Cf. Cooper v. Unimin Corp.*, 639 F.Supp. 1208, 1212 (Idaho 1986) (mining or excavating activities do not rise to the level of wantonness or willfulness to sustain a cause of action brought by a trespasser against a possessor of land). Consequently, under a common law negligence theory, Union Pacific owed no duty to Mowers.

**B.**   ***Duty to Warn Under Section 335 of Restatement (2nd) of Torts***

Alternatively, Mowers asserts Union Pacific owed her a duty to warn under Section 335 of the Restatement (2nd) of Torts. This section provides:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of land, is subject to liability for bodily harm caused to them by an artificial condition of the land, if
> (a) the condition
> 　　(i) is one which the possessor has created or maintains and
> 　　(ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and
> 　　(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and
> (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

**MEMORANDUM DECISION AND ORDER - 8**

Restatement (Second) of Torts § 335 (1965).[6] The Restatement presents an exception to the general rule that a possessor of land owes no duty of care when there are frequent trespassers in significant numbers. *Cooper*, 639 F.Supp. at 1213.

The problem with Mowers's argument under the Restatement is that Section 335 is written in the conjunctive, requiring all conditions to be satisfied before liability will attach. The verified facts in the complaint fail to satisfy at least two elements of Section 335.

First, there are no facts in the Complaint indicating frequent, general trespassing in the area where Mowers trespassed. *See Lindquist*, 748 P.2d at 415 (holding that frequent, general trespassing in a parking lot did not constitute a showing of such frequent or general trespassing into the freight-loading area where the injury occurred). Mowers has not alleged facts indicating Union Pacific should have known of constant intrusions at this particular intersection, or in the area where Mowers crossed the tracks two to three car lengths from the intersection. *See Id.* at 416 (absent facts indicating a history of constant intrusion into the area where the plaintiff fell, no duty arose to the trespassing plaintiff); *Cooper*, 639 F.Supp. at 1213 (absent evidence of constant trespass on the specific area of the land in question, the prerequisite to the application of Section 335 is not present).

And second, even assuming Union Pacific should have known, either from past events or in the abstract that individuals would cross over or under the train couplings

---

[6] The Court in *Lindquist* considered a plaintiff's similar argument under Section 335 of the Restatement. 748 P.2d at 415-16.

**MEMORANDUM DECISION AND ORDER - 9**

while a train is stopped in an intersection for a lengthy period of time, the facts in the

Complaint do not establish that a stationary train was something trespassers would not

discover. The presence of the train was noticeable to any observer. Mowers was aware

the train was on the tracks, as she had been waiting at the crossing for at least twenty

minutes. Union Pacific had no duty to guard against the risk that a person on foot would

enter onto the tracks and crawl under the train coupling. *See Cooper*, 639 F.Supp. at 1213

(explaining that Comment f to Section 335 of the Restatement places the onus on the

trespasser to observe the dangerous conditions inherent in the use to which the possessor

puts the land). [7]

The Court finds Mowers has not alleged facts sufficient to establish a duty to warn

under Section 335 of the Restatement. [8]

### C.  *Duty Under Idaho Code § 49-1425*

Mowers asserts that Union Pacific's conduct was willful and wanton because it

violated Idaho Code § 49-1425. This statute, commonly known as an anti-blocking

statute, states: "[n]o person or government agency shall operate any train in a manner as

to prevent vehicular use of any highway for a period of time in excess of fifteen (15)

consecutive minutes[.]"Idaho Code § 49-1425. Violation of Idaho Code § 49-1425

---

[7] The Court finds also the reasoning in *Anderson* persuasive that an obligation to exercise a lookout for persons crossing the tracks or ducking between rail cars should not be imposed, because the failure to guard against the mere possibility of injury does not constitute actionable negligence. 299 N.W.2d at 617.
[8] Federal regulations require a horn to be sounded only when the locomotive or lead cab car is "approaching a public highway-rail grade crossing." 49 C.F.R. § 222.21. The Court has not located any regulation requiring a horn to be sounded during switching operations.

constitutes an infraction, and results in a fine. Idaho Code §§ 49-1503 and 18-113A.[9]
Union Pacific argues the statute cannot create a duty, because its enforcement is
preempted by the Interstate Commerce Commission Termination Act (ICCTA). The
Court finds the statute does not create a duty, and therefore considers it unnecessary to
reach Union Pacific's preemption argument, as will be explained.

By asserting Idaho Code § 49-1425 defines the standard of conduct, Mowers is
claiming that the statute's violation constitutes negligence per se. *Albertson v. Fremont
County, Idaho*, 834 F.Supp.2d 1117, 1134 (D. Idaho 2011) (statutes may define the
applicable standard of care owed, and a violation of the statute may constitute negligence
per se). To replace a common law duty of care with a duty of care imposed statutorily,
the following four elements must be met: "(1) the statute or regulation must clearly define
the required standard of conduct; (2) the statute or regulation must have been intended to
prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be
a member of the class of persons the statute or regulation was designed to protect; and (4)
the violation must have been the proximate cause of the injury." *Id.* at 1134-35 (quoting
*O'Guin v. Bingham County*, 142 Idaho 49, 122 P.3d 308, 311 (2005)). Because
negligence per se establishes both duty and breach for the purpose of the negligence
analysis, the party asserting the claim must demonstrate that the statute itself creates a
legal duty applicable to the defendant. *Id.* at 1135.

---

[9] The statute sets forth six exceptions that do not constitute violations resulting in a fine. However, none
are relevant here.

**MEMORANDUM DECISION AND ORDER - 11**

Idaho Code § 49-1425 was enacted in 1982, along with numerous other traffic-based statutes, as part of the Traffic Infractions Act. H.B. 541, 1982 Leg., 46th Leg., 2nd Sess. (Idaho 1982). The stated purpose of enacting the law was to change certain existing traffic violations from misdemeanors to infractions, thereby reducing congestion in the court system and improving the ability of peace officers to regulate and control motor vehicle traffic. Section 49-1425 was a new statutory section, added as part of the law.

Based upon the purpose of Idaho Code § 49-1425, the Court finds the statute was not intended to prevent the type of harm that occurred here. The statute is a traffic regulation, designed to impose a fine upon certain railroad activities that block crossings and prevent the free flow of traffic. The legislature's intent in enacting the Traffic Infractions Act was not to prevent injury to persons crossing a railroad track, but rather to regulate and control vehicle traffic. Looking to the text of the statute itself, the obvious inference is that the statute is designed to prevent motor vehicle congestion resulting from a stopped train. *Cf. O'Guin*, 122 P.3d at 312-13 (examining the legislative intent to discern whether the injury was the type of harm the statute was intended to prevent). There is no stated intent to safeguard human health or safety, or prevent possible injury to people crossing the tracks between the rail cars.

Accordingly, because the statute is not a public safety statute intended to prevent the specific type of harm that occurred here, the Court finds it does not form the basis of a duty owed to Mowers. *Steed v. Grand Teton Council of the Boy Scouts of Am., Inc.*, 172 P.3d 1123, 1128 (Idaho 2007).

**MEMORANDUM DECISION AND ORDER - 12**

## CONCLUSION

For the reasons explained above, the detailed facts pled in the Complaint do not establish that Union Pacific owed Mowers a duty under the circumstances, and the Complaint is subject to dismissal. The Court of Appeals for the Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Ca. Collection Serv., Inc*., 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether the plaintiff will prevail but whether she "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

If Mowers can sufficiently plead facts to establish her claim, she may file an amended complaint within thirty days. However, it may be exceedingly difficult to state a claim based upon the facts alleged. This is not a case where more details would suffice. But, in light of the Ninth Circuit precedent, the opportunity to do so will not be foreclosed.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion to Dismiss (Dkt. 5) is **GRANTED.**

2) Plaintiff may file an amended complaint by **November 30, 2016**. If

   Plaintiff does not file an amended complaint within that time period, the

   Court will enter an order dismissing Plaintiff's complaint with prejudice.

DATED: October 25, 2016

_____
Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**